FILED ✓    LODGED ___
RECEIVED ___    COPY ___

APR 1 3 2021

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

PAUL ANTHONY MARTIN
Acting United States Attorney
District of Arizona
KEVIN M. RAPP
Assistant United States Attorney
Arizona State Bar No. 014249
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Kevin.Rapp@usdoj.gov
*Attorneys for Plaintiff*

REDACTED FOR
PUBLIC DISCLOSURE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>vs.<br><br>James Theodore Polzin,<br><br>Defendant. | No.   CR-21-00264-PHX-JJT (DMF)<br><br>**INDICTMENT**<br><br>VIO:<br><br>18 U.S.C. § 1343<br>(Wire Fraud)<br>Counts 1-5<br><br>18 U.S.C. §1957(a)<br>(Transactional Money Laundering)<br>Counts 6-26<br><br>18 U.S.C. § 981(a)(1)(C)<br>18 U.S.C. § 982(a)(1)<br>28 U.S.C. § 2461(c)<br>Forfeiture Allegations |

**THE GRAND JURY CHARGES:**

**DEFENDANT**

1.    James Theodore Polzin ("POLZIN"), age 46, is a self-employed accountant and recently owned and operated a company known as TSP Imports LLC.  He resides in both Gilbert, Arizona, and Ukraine.

**INTRODUCTION**

2.    On March 27, 2020, the U.S. President signed a $2.2 trillion stimulus bill called the CARES Act, which was intended to ameliorate the economic impact of the

COVID-19 Pandemic. *See* Pub. L. 116-136.  Under the provisions of the CARES Act, $2.2 trillion dollars in economic stimulus was passed by the 116th U.S. Congress and signed into law by the President in March 2020 in response to the economic decline caused by the COVID-19 pandemic in the United States.

3.	The provisions of the CARES Act, in conjunction with an officially declared disaster by the United States Government, allowed for the Small Business Administration (SBA) to offer Economic Injury Disaster Loan (EIDL) funding to business owners negatively affected by the COVID-19 pandemic.  Using the SBA online portal, EIDL applicants submit personal and business information in support of each EIDL application, and they do not have to submit supporting documentation of any sort.

4.	The application includes a jurat-like paragraph where the applicant affirms that the information submitted is true and correct under the penalty of perjury and applicable criminal statutes.  The application process involves filling out assorted data fields relating to the size of the affected business entity, the ownership of said business, and other information such as the number of employees and gross business revenues realized in the 12 months prior to the COVID-19 impact on the national economy.  This information, submitted by the applicant, is then used by SBA systems to calculate the principal amount of money the small business is eligible to receive in the form of an EIDL.  However, in conjunction with the submission of an EIDL application, by simply clicking on and checking a box within the on-line application, an applicant may request and then receive up to $10,000.00 in an EIDL Cash Advance Grant based on the number of employees claimed.  The EIDL Cash Advance Grant need not be repaid to the SBA if the loan application is ultimately denied by the SBA, or if the applicant declines the EIDL that may be offered by the SBA at a later date.

5.	The SBA Office of Disaster Assistance (ODA) controls the EIDL program.  The ODA has authority over all loans created and disbursed under the EIDL program.  EIDL principal proceeds and available Cash Advance Grants (up to $10,000) are solely

1    funded by the SBA and are disbursed from government-controlled accounts maintained
2    with the U.S. Treasury at Federal Reserve Banks throughout the United States.

3         6.     Pursuant to the provisions governing the EIDL program, loan proceeds must
4    be used by that business on certain permissible expenses.  The EIDL (working capital)
5    loans may be used by the afflicted business, which must have existed in an operational
6    condition on February 1, 2020, to pay fixed debts, payroll, accounts payable, and other bills
7    that could have been paid had the COVID-19 disaster not occurred.

8                    **EIDL APPLICATIONS SUBMITTED BY POLZIN**
9      **"Transparen CPAS LLC/Transparen CPAS/Transparen CPA/POLZIN Holdings**
10                                    **LLC"**

11        7.     The Small Business Administration (SBA) is responsible for extending loans
12    to businesses applying for loans associated with the EIDL program.  POLZIN submitted
13    loan documents on or about May 2020 through July 2020 bearing the signature of POLZIN.
14    Each application sought an EIDL loan for businesses identified as Transparen CPAS LLC,
15    Transparen CPAS, Transparen CPA, and POLZIN Holdings LLC.  Separate loans were
16    filed for Transparen CPAS and Transparen CPAS LLC as the former is POLZIN's Sole
17    Proprietorship and the latter is his Limited Liability Company. Each application identified
18    POLZIN as owning 100% of the business.  On each of the applications, POLZIN listed his
19    residential address as XXXX S. Val Vista Dr., #218 Mesa, AZ.

20        8.     Transparen CPAS LLC was formed/registered on or about May 22, 2017.
21    In order to support an EIDL in the amount of $150,000 for application 3000001644/loan
22    5556727802 utilizing EIN XX-XX19913, POLZIN represented that the business,
23    Transparen CPAS LLC, had revenue of $645,000 and nine employees.

24        9.     In order to support a second EIDL in the amount of $150,000 for application
25    3601386837/loan 7800007909 utilizing EIN XX-XX75306, POLZIN represented that the
26    business, Transparen CPAS, had revenue of $1,205,401 and 16 employees.  In addition,
27    POLZIN provided the SBA with an IRS Schedule C (Form 1040 or 1040-SR) which
28    represented Transparen CPAS had wages of $864,000.00.

- 3 -

10.     In order to support a third EIDL in the amount of $150,000 for application 3000003864 utilizing EIN XX-XX19913, POLZIN represented that the business, Transparen CPAS LLC, had revenue of $952,000 and 11 employees. This application was not approved by the SBA.

11.     In order to support a fourth EIDL in the amount of $150,000 for application 3304691591 utilizing EIN XX-XX75306, POLZIN represented that the business, Transparen CPA, had revenue of $12,507,874 and 16 employees. This application was not approved by the SBA.

12.     POLZIN Holdings LLC was formed/registered on or about March 14, 2019. In order to support an EIDL in the amount of $150,000 for application 3306367687/loan 9193768002 utilizing EIN XX-XX90157, POLZIN represented that the business, POLZIN Holdings LLC, had revenue of $554,650 and eight employees.

13.     Department of Economic Security (DES) payroll records for Transparen CPAS LLC (EIN XX-XX19913) showed no quarterly tax and wage reports for the third and fourth quarters of 2019.  The first quarter of 2019 listed two employees,  POLZIN and L.P., with total wages of $18,450.00.  The second quarter listed three employees: POLZIN, L.P., and R.G.  Second quarter wages totaled $21,100.00.

14.     DES payroll records for POLZIN's SSN (XXX-X7-5306), which was used as his EIN for Transparen CPAS, showed no additional wages.   DES payroll records for POLZIN Holdings LLC (EIN XX-XX90157) revealed no records/wages.

15.     On each of the approved EIDL applications, POLZIN signed the Loan Authorization and Agreement documents using DocuSign technologies.

**PURCHASE OF RESIDENCE AND LUXURY VEHICLE**

16.     POLZIN purchased  with cash the property located at XXX N. Coronado Dr., Gilbert, Arizona 85234, on June 19, 2020, for $385,000.00.  Recorded documents show the house was purchased with cash.

17.     POLZIN opened a BMO Harris Business Advantage Checking Account XXXXXX1088 (Account 1) on December 17, 2019, in the name of Transparen CPAS

1  LLC.  Also, on December 17, 2019, POLZIN opened a BMO Harris Smart Advantage
2  Account XXXXXX7848 (Account 2) in the name of POLZIN and S. P.

3      18.    Account 1 was opened with a $100.00 deposit and received no further
4  deposits until April 27, 2020, when the account received a PPP loan disbursal of
5  $180,095.37.   Between April and June 2020, Account 1 received approximately
6  $740,957.37 in EIDL and PPP loans.  During the same time period, Account 1 received
7  approximately $161,114.45 in other deposits.  Account 2 received a $218,962.00 PPP loan
8  disbursal on June 10, 2020, and a total of $475,000.00 in transfers from Account 1 between
9  May and June 2020.  Bank records show on June 23, 2020, $388,198.34 was wired to a
10  title company from Account 2.

11      19.    In addition to the residence detailed above POLZIN purchased a 2017
12  Porsche 911 Vin #XXXXXX98HS178457 via Bank of America Cashier's Check
13  #XXXX8714315, dated June 19, 2020 in the amount of $159,461.64, payable to Luxury
14  Auto Collection.  The source of the funds was comprised of three fraudulent loans obtained
15  from the SBA.

16      20.    The loan Authorization and Agreement signed by POLZIN specifically
17  require that the EIDL funds be used for working capital to alleviate economic injury caused
18  by disaster occurring in the months of January 31, 2020, and continuing thereafter and not
19  for the purchase of a private residence, vacation home or luxury vehicle.

20                              **COUNTS 1-5**
21                               Wire Fraud
22                           [18 U.S.C. §1343]

23      21.    Paragraphs 1 through 20 of this indictment are re-alleged and incorporated
24  by reference as though fully set forth herein.

25             **MANNER AND MEANS OF THE SCHEME TO DEFRAUD**
26

27      22.    POLZIN'S scheme targeted the SBA with the intention of defrauding the
28  SBA of EIDL Program as authorized under the provisions of the CARES Act by providing

                                  - 5 -

materially false loan applications claiming non-existent employees and revenues for business entities owned and operated by POLZIN. In furtherance of the scheme to defraud, POLZIN submitted supporting loan documents that contained contradicting information for the same business on each application. These representations were false and fraudulent. POLZIN made these misrepresentations with the intent to defraud the United States in order to obtain loan proceeds that he was not entitled to.

23.     POLZIN, for the purpose of executing the aforesaid scheme and artifice, did knowingly make materially false, fictitious, or fraudulent statements or representations, or make or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or representation regarding the number of employees and revenue:

24.     On or about the dates specified as to each count below, Maricopa County, in the District of Arizona, POLZIN, for the purpose of executing the aforesaid scheme and artifice, did knowingly transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, as more particularly described in the following table.

| Count | Date | Business Name | Application/ Loan | IP Address | Receiving Server |
|-------|------|---------------|-------------------|------------|------------------|
| 1 | 4/3/20 | Transparen CPAS LLC | 3000003864 | 91.192.44.58 Chernihiv, Ukraine | Rapid Finance, Central US, Region, Iowa |
| 2 | 5/30/20 | Transparen CPAS LLC | 3000001644/ 5556727802 | 184.187.219.220 Chandler, AZ/ 188.163.21.106 Chernihiv, Ukraine | Rapid Finance, Central US, Region, Iowa |
| 3 | 6/16/20 | Transparen CPA | 3304691591 | 184.187.219.220 Chandler, AZ | Rapid Finance, Central US, Region, Iowa |

| 4 | 6/17/20 | Transparen CPAS LLC | 3601386837/ 7800007909 | 174.192.78.49 Green Bay, WI/ 104.143.92.249 San Francisco, CA | Rapid Finance, Central US, Region, Iowa |
| 5 | 7/7/20 | POLZIN Holdings LLC | 3306367687/ 9193768002 | 74.213.234.35 Gardena, CA/ 184.187.219.220 Chandler, AZ | Rapid Finance, Central US, Region, Iowa |

All in violation of Title 18, U.S.C. § 1343.

## COUNTS 6-26
Transactional Money Laundering
[18 U.S.C. 1957(a)]

25.     Paragraphs 1 through 24 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

26.     Between May 2020 and March 2021, the specific dates and transactions identified below, in the District of Arizona and elsewhere, POLZIN knowingly engaged in monetary transactions from his accounts located at BMO Harris and Bank of America, of a value greater than $10,000, occurring within the United States, with funds criminally derived from wire fraud as alleged in Counts 1-5 of this Indictment and other fraudulent activity conducted by POLZIN during the relevant time period, with each transaction being a separate count of this Indictment, as follows:

| Count | Date of Transaction (on or about) | Description of Transaction | Transaction Amount | Financial Institution |
|---|---|---|---|---|
| 6 | 05/01/2020 | Transfer from Transparen BMO x1088 to Polzin BMO x7848 | $35,000.00 | BMO Harris |
| 7 | 05/07/2020 | Check Paid to James Polzin from Transparen BMO x1088 | $50,000.00 | BMO Harris |
| 8 | 05/07/2020 | Transfer from Transparen BMO x1088 to Polzin BMO x7848 | $40,000.00 | BMO Harris |
| 9 | 05/15/2020 | Wire Sent to Joint Stock Commercial fbo S.P., Pop Family Support from Polzin BofA x3557 | $50,000.00 | Bank of America |

| 10 | 05/22/2020 | Wire Sent to Ukgras Bank fbo James Polzin, Pop Family Support from Polzin BofA x3557 | $40,000.00 | Bank of America |
| 11 | 05/26/2020 | Wire Sent to Ukgras Bank fbo James Polzin, Pop Family Support from Polzin BofA x3557 | $50,000.00 | Bank of America |
| 12 | 06/04/2020 | Deposit EMG Homes ACH into Transparen BMO x1088 | $20,251.20 | BMO Harris |
| 13 | 06/10/2020 | Deposit Aurora Homes Check into Transparen BMO x1088 | $40,799.00 | BMO Harris |
| 14 | 06/10/2020 | Transfer to James Theodore Polzin Confirmation# 1878766613 from Polzin BofA x3557 | $15,000.00 | Bank of America |
| 15 | 06/12/2020 | Check Paid to D. R. from Transparen BMO x1088 | $10,700.00 | BMO Harris |
| 16 | 06/18/2020 | Requested Withdrawal from Transparen BMO x1088 | $300,000.00 | BMO Harris |
| 17 | 06/18/2020 | Deposit of $300,000 funds from Transparen BMO x1088 into Polzin BMO x7848 | $300,000.00 | BMO Harris |
| 18 | 06/19/2020 | Purchase of Cashier's Check, payable to Luxury Auto Collection from Polzin BofA x3557 | $159,461.64 | Bank of America |
| 19 | 06/23/2020 | Wire transfer to Magnus Title for the purchase of 902 N. Coronado from Polzin BMO x7848 | $388,198.34 | BMO Harris |
| 20 | 06/25/2020 | Requested Withdrawal from Transparen BMO x1088 | $100,000.00 | BMO Harris |
| 21 | 06/25/2020 | Deposit of $100,000 funds from Transparen BMO x1088 into Polzin BMO x7848 | $100,000.00 | BMO Harris |
| 22 | 06/26/2020 | Check Paid to Wolff Development from Transparen BMO x1088 | $50,000.00 | BMO Harris |
| 23 | 07/27/2020 | Deposit of E.M., PLLC Check into Transparen BMO x1088 | $29,161.75 | BMO Harris |
| 24 | 08/04/2020 | Wire Sent to Ukgras Bank fbo James Polzin, Pop Family Support from Polzin BofA x3557 | $70,000.00 | Bank of America |
| 25 | 08/12/2020 | Wire Sent to Ukgras Bank fbo James Polzin, Pop Family Support from Polzin BofA x3557 | $90,000.00 | Bank of America |

| 26 | 03/17/2021 | Deposit of Luxury Auto Collection check #25806 for the resale of the Porsche 911 | $126,000.00 | Capital One |
|----|-----------|----------------------------------------------------------------------------------|-------------|-------------|

All in violation of Title 18, U.S.C. § 1957(a).

## FORFEITURE ALLEGATIONS

27.     The Grand Jury realleges and incorporates the allegations of Counts 1 through 26 of this Indictment, which are incorporated by reference as though fully set forth herein.

28.     Pursuant to Title 18, United States Code, Sections 981 and 982, Title 21, United States Code, Section 853 and Title 28, United States Code, Section 2461(c) and upon conviction of one or more of the offenses alleged in Counts 1 through 26 of this Superseding Indictment, the defendant(s) shall forfeit to the United States all right, title, and interest in any and all property, real or personal, involved in such offense(s), or any property traceable to such property involved in the offense(s), or conspiracy to commit such offense(s), including the following:  (a) all money or other property that was the subject of each transaction, transportation, transmission or transfer in violation of a statute listed in Title 18, United States Code, Section 982, (b) all other property constituting proceeds obtained as a result of those violations, and (c) all property used in any manner or part  to commit or to facilitate the commission of those violations including, but not limited to the sum of money representing the amount of money involved in the offense(s) and the property named below.

a.  A sum of money equal to at least $2,693,308 in United States currency, representing the amount of money involved in the offenses.

b.  All right, title, and interest in any and all personal property, involved in or traceable to any transaction set forth in Counts 1 through 26 of this Indictment.  Such property includes, but is not limited to, the following real property:

i.  902 N. Coronado Drive, Gilbert, Arizona, 85234, titled in the name of James T. Polzin and Svitlana O. Popsii, and  more specifically

- 9 -

described as Lot 110, Discovery Park at Val Vista Lakes, according to Book 298 of Maps, page 26, records of Maricopa County, Arizona. APN: 304-98-110.

A TRUE BILL

/S/
FOREPERSON OF THE GRAND JURY
Date: April 13, 2021

PAUL ANTHONY MARTIN
Acting United States Attorney
District of Arizona

/S/
KEVIN M. RAPP
Assistant U.S. Attorney