NOT FOR PUBLICATION

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | Case No. CR-21-00264-PHX-JJT |
| Plaintiff, | |
| v. | **ORDER** |
| James Theodore Polzin, | |
| Defendant. | |

At issue is Defendant's Motion to Revoke Detention Order (Doc. 13), to which the government has filed a Response (Doc. 19) and Defendant has filed a Reply (Doc. 24). The Court has read the transcript of the detention hearing before United States Magistrate Judge John Z. Boyle herein, and has considered and internalized the arguments of both parties made in the briefing referenced above, as well as their submissions to Judge Boyle. Defendant raises no new facts or arguments in his briefing, and the Court concludes that no additional oral argument would assist in its determination of the issue. LRCrim 12.1(a); LRCiv 7.2(f). The Court reviews the detention issue *de novo*.

The parties ably briefed the law under which the Court decides a contested detention issue. The question before the Court is whether, under 18 U.S.C. § 3142(e), "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." The Court addresses this question in two sequential steps. First, it determines whether the government has shown that a defendant presents a serious risk of flight and or a danger to the community. 18

U.S.C. § 3142(f)(2)(A)-(B).[1] If the Court concludes the government has made such a showing, the Court must then determine whether conditions it could impose upon release of the defendant would reasonably address the risk and or danger. 18 U.S.C. § 3142(g). To answer this question, Congress has directed courts to consider the following factors (in relevant part):

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—
  (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
  (B) weather, at the time of the current offense or arrest, the person was on probation, or parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, state, or local law; and

(4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release[.]

18 U.S.C. § 3142(g). The Court is mindful that rare circumstances justify detention. See

---

[1] The government bears the burden of proving flight risk by preponderance of the evidence and danger by clear and convincing evidence. *United States v. Motamedi*, 767 F.2d 1403, 1404, 1406 (9th Cir. 1985). In the present case, Judge Boyle found the government had met its burden of demonstrating serious risk of flight, but did not find Defendant was a danger to the community. (Doc. 15 at 3, 6-7.) But because this Court's review of the detention issue is *de novo*, it must evaluate both the flight risk and dangerousness without regard to Judge Boyle's previous findings. Nonetheless, upon that review, it concludes that the government has not met its burden of proving further economic danger to the community by clear and convincing evidence, for the same reasons Judge Boyle so found. In the interest of judicial economy, it will not repeat that analysis. The remainder of this Order addresses only the evaluation of flight risk and whether conditions could reasonably ameliorate that risk.

*United States v. Motamedi*, 767 F.2d 1403, 1405)("Doubts regarding the propriety of release should be resolved in favor of the defendant.")

In this matter, the government has proven by preponderance of the evidence that Defendant presents a serious risk of flight upon release. Defendant is now under Indictment for 26 counts of wire fraud transactional money laundering involving nearly $2.7 million of federal government stimulus program funds. He is a sophisticated businessperson with significant experience moving and accessing funds from multiple locations and accounts, not all of which the government may have identified. The ties he had to this community have diminished recently, in relation to the pending criminal matter and for reasons wholly unrelated. At the time of his arrest, Defendant was self-employed and lived in a rental property. While he had purchased a home with plans to renovate and live in it with his spouse, the government has now filed *lis pendens* on that property, alleging it was purchased with proceeds of the activities at issue in the instant Indictment.

Conversely, Defendant's ties to both Canada and Ukraine are strong, and have grown stronger since his arrest. Defendant grew up in Canada, where much of his remaining family resides, including his two children. Defendant's spouse—a Ukrainian citizen—has left Arizona and returned to Ukraine since his arrest. Defendant has traveled frequently to Ukraine and lived there for extended periods; he holds temporary residency there, which will be eligible for conversion to permanent residency within six months, and based on information he furnished to government agents, Defendant appears to have business activities there. He also has frequently accessed his accounts from Ukraine to obtain funds. All of this demonstrates by preponderance of the evidence that Defendant is a flight risk.

The Court also finds upon review of the Section 3142(g) factors that no combination of conditions will reasonably assure Defendant's presence at subsequent proceedings were he released. First, the nature and circumstances of the offenses charged favor detention. Since Defendant's detention hearing, circumstances favoring detention have become stronger. The grand jury returned an Indictment in the matter, charging Defendant with 5

counts of wire fraud and 21 counts of money laundering, and the relevant conduct the Court could consider should he be convicted could be as much as $2.693 million, which would place Defendant in a substantially higher guideline range than the $450,000 at issue in the original Complaint upon which Judge Boyle made his determination. These are, in a few words, serious charges. This factor weighs in favor of detention.

The Court is mindful that it must treat the second factor—weight of the evidence against the Defendant—as the least important. *Motamedi*, 767 F.2d at 1407. But even according this factor less importance, it nonetheless favors the government. The gravamen of the fraud allegations here is that Defendant made material misrepresentations to the government in order to secure millions of dollars in stimulus funds, and the material misrepresentations alleged dealt with ostensibly objective and verifiable facts such as number of employees and revenues associated with applicant companies. At present, there appears to be no support for those representations in the form of employment records or employee witnesses, tax records, company books, bank accounts or the like supporting the claimed level of business activity or revenue. The Court recognizes that the defense is just beginning its preparations and as it advances the information may change. But at present, the weight of the evidence favors the government.

The third factor—Defendant's history and characteristics—favors detention. While Defendant has no criminal history prior to his arrest and charging in this matter, the current charges allege a repetitive and brazen fraudulent scheme that resulted in Defendant's receipt of more than two and a half million dollars, much of which is unaccounted for. Defendant's access to those dollars paid out, coupled with his lack of familial ties, the encumbrance by the government of his recently-purchased home, and the fact that his strongest familial ties are in Canada and Ukraine, all point to a lack of stability in the community that is not much more than transitory at this point. The Court also is concerned by the number of inconsistent statements Defendant has made on material issues affecting the release issue. These include: 1) his statements to the Pretrial Services Officer interviewing him that he had no regular contact with his children and other family in

- 4 -

Canada—and thus tending to minimize his ties to Canada—which was directly and with specificity contradicted by his spouse; and 2) his assertion to Customs and Border Protection personnel upon entry to the United States from Ukraine earlier this year that he had a vacation home in Arizona when he asserts to this Court, for purposes of evaluating detention issues, that Arizona is his home. The government also highlights as relevant to this factor the unexplained disposition of nearly $1 million in stimulus payments and other funds that have been deposited into Defendant's Transparen LLC account at BMO Harris bank since April 2020, as well as Defendant's liquidation of his Porsche automobile at a considerable loss on the day before he planned to leave Arizona for Ukraine, followed by the transfer of some of the $120,000 sale proceeds to Defendant's bank account in Ukraine. The Court agrees. This factor falls in favor of detention rather than release with conditions.

The final factor—nature and seriousness of danger to others if Defendant is released—falls in favor of release. As the Court indicated in footnote 1 *supra*, it does not find that Defendant poses a danger to others, economically or otherwise, if he is released.

Upon a balance of all factors, however, the Court firmly concludes there is no combination of factors that will reasonably assure Defendant's presence at subsequent proceedings in this matter. It therefore will deny the Motion.

The Court notes Defendant's argument regarding the dangers to him of COVID-19 in a penal setting. (Doc.12 at 4-5; Doc. 24 at 2-3.) The Court acknowledges those concerns, which are heightened for anyone whose movement and corresponding ability to distance themselves from a perceived risk is externally limited. But Defendant presents no particular risk of harm in his circumstance. At age 46, he is not in any age demographic identified as likely to suffer extreme illness or death were he to contract the virus; nor does he report any co-morbidity condition recognized as putting him at such risk. Moreover, Defendant's generalized statements about the prevalence of COVID infection in "prisons" lack relevance in light of the fact that the specific CAFCC facility in Florence where Defendant is housed, and will remain through resolution of this matter, has had low infection rates. The Court receives daily reports from the facility. Out of approximately 4000 detainees,

the facility has over the past two weeks reported its daily total number of active cases at a low of 3 and a high of 18—between 0.007% and 0.045%. Moreover, approximately ten percent of the facility population is now vaccinated and all remaining detainees will be offered the vaccine in the coming months.

Accordingly,

**IT IS ORDERED** denying Defendant's Motion to Revoke Detention Order. (Doc. 13.)

Dated this 3rd day of May, 2021.

Honorable John J. Tuchi
United States District Judge