GLENN B. McCORMICK
Acting United States Attorney
District of Arizona

KEVIN M. RAPP
Assistant U.S. Attorney
Arizona State Bar No. 014249
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona  85004
Telephone: 602-514-7500
Email:kevin.rapp@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>James Theodore Polzin,<br><br>　　　　　　Defendant. | No. CR-21-00264-PHX-JJT<br><br>**PLEA AGREEMENT** |

Plaintiff, United States of America, and the defendant, JAMES THEODORE POLZIN, hereby agree to dispose of this matter on the following terms and conditions:

1. **PLEA**

The defendant will plead guilty to Count 1 of the indictment charging defendant with a violation of 18 United States Code (U.S.C.) § 1343, Wire Fraud, a Class C felony offense; and Count 19 of the indictment charging defendant with a violation of 18 United States Code (U.S.C.) §1957, Transactional Money Laundering, A Class C Felony offense.

2. **MAXIMUM PENALTIES**

　　a.　　Count 1: A violation of 18 U.S.C. § 1343, is punishable by a maximum fine of $250,000, a maximum term of imprisonment of 20 years, or both, and a term of

supervised release of 3 years. A maximum term of probation is five years.

      b.    Count 19: A violation of 18 U.S.C. § 1957, is punishable by a maximum fine of $250,000, a maximum term of imprisonment of 10 years, or both, and a term of supervised release of 3 years. A maximum term of probation is five years.

      c.    According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall order the defendant to:

          (1)    make restitution to any victim of the offense pursuant to 18 U.S.C. § 3663 and/or 3663A, unless the Court determines that restitution would not be appropriate;

          (2)    pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine is not appropriate;

          (3)    serve a term of supervised release when required by statute or when a sentence of imprisonment of more than one year is imposed (with the understanding that the Court may impose a term of supervised release in all other cases); and

          (4)    pay upon conviction a $100 special assessment for each count to which the defendant pleads guilty pursuant to 18 U.S.C. § 3013.

      d.    The Court is required to consider the Sentencing Guidelines in determining the defendant's sentence. However, the Sentencing Guidelines are advisory, and the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime(s) of conviction, unless there are stipulations to the contrary that the Court accepts.

**3.**    **AGREEMENTS REGARDING SENTENCING**

      a.    Stipulation. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and defendant stipulate to the following :

          (1)    Defendant's sentence shall not exceed the low end of the sentencing range as calculated under U.S.S.G. § 1B1.1(a). That this stipulated sentencing cap will not change based on departures considered under U.S.S.G. § 1B1.1(b). Nothing in this agreement shall preclude defendant from moving for a downward departure, variance, or

sentence below the cap, or the court from imposing a sentence below the cap.

        (2)    The loss (both intended and actual) exceeds $3.5 million but is less than $9.5 million.

        (3)    On or before the date Defendant enters this plea he will execute all necessary documents to facilitate the interlocutory sale of XXX N. Coronado Dr. Gilbert, Arizona 85234. Once the property is sold via an interlocutory sale, then the parties stipulate that the net sales proceeds from it will be forfeited.

    b.    Restitution. Pursuant to 18 U.S.C. § 3663 and/or 3663A, the defendant specifically agrees to pay full restitution, regardless of the resulting loss amount but in no event more than $4,000,000, to all victims directly or proximately harmed by the defendant's "relevant conduct," including conduct pertaining to any dismissed counts or uncharged conduct, as defined by U.S.S.G. § 1B1.3, regardless of whether such conduct constitutes an "offense" under 18 U.S.C. §§ 2259, 3663 or 3663A. The defendant understands that such restitution will be included in the Court's Order of Judgment and that an unanticipated restitution amount will not serve as grounds to withdraw the defendant's guilty plea or to withdraw from this plea agreement.

    c.    Assets and Financial Responsibility. The defendant shall make a full accounting of all assets in which the defendant has any legal or equitable interest. The defendant shall not (and shall not aid or abet any other party to) sell, hide, waste, spend, or transfer any such assets or property before sentencing, without the prior approval of the United States (provided, however, that no prior approval will be required for routine, day-to-day expenditures). The defendant also expressly authorizes the United States Attorney's Office to immediately obtain a credit report as to the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court. The defendant also shall make full disclosure of all current and projected assets to the U.S. Probation Office immediately and prior to the termination of the defendant's supervised release or probation, such disclosures to be shared with the U.S. Attorney's Office, including the Financial Litigation Unit, for any purpose. Finally, the defendant shall participate in the

Inmate Financial Responsibility Program to fulfill all financial obligations due and owing under this agreement and the law.

    d.    Acceptance of Responsibility. If the defendant makes full and complete disclosure to the U.S. Probation Office of the circumstances surrounding the defendant's commission of the offense, and if the defendant demonstrates an acceptance of responsibility for this offense up to and including the time of sentencing, the United States will recommend a two-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(a). If the defendant has an offense level of 16 or more, the United States will recommend an additional one-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(b).

**4.**    **AGREEMENT TO DISMISS OR NOT TO PROSECUTE**

    a.    This office shall not prosecute the defendant for any offenses committed by the defendant, and known by the United States, in connection with the conduct described in the indictment.

    b.    This agreement does not, in any manner, restrict the actions of the United States in any other district or bind any other United States Attorney's Office.

    c.    The remaining counts in the Indictment will be dismissed at the time of sentencing.

**5.**    **COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION**

    a.    If the Court, after reviewing this plea agreement, concludes that any provision contained herein is inappropriate, it may reject the plea agreement and give the defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P. 11(c)(5).

    b.    If the defendant's guilty plea or plea agreement is rejected, withdrawn, vacated, or reversed at any time, this agreement shall be null and void, the United States shall be free to prosecute the defendant for all crimes of which it then has knowledge and any charges that have been dismissed because of this plea agreement shall automatically

be reinstated. In such event, the defendant waives any and all objections, motions, and defenses based upon the Statute of Limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or proceedings. The defendant understands that any statements made at the time of the defendant's change of plea or sentencing may be used against the defendant in any subsequent hearing, trial, or proceeding subject to the limitations of Fed. R. Evid. 410.

6. **WAIVER OF DEFENSES AND APPEAL RIGHTS**

The defendant waives (1) any and all motions, defenses, probable cause determinations, and objections that the defendant could assert to the indictment or information; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of judgment against the defendant, or any aspect of the defendant's sentence, including the manner in which the sentence is determined, including but not limited to any appeals under 18 U.S.C. § 3742 (sentencing appeals) and motions under 28 U.S.C. §§ 2241 and 2255 (habeas petitions), and any right to file a motion for modification of sentence, including under 18 U.S.C. § 3582(c). This waiver shall result in the dismissal of any appeal, collateral attack, or other motion the defendant might file challenging the conviction, order of restitution or forfeiture, or sentence in this case. This waiver shall not be construed to bar an otherwise-preserved claim of ineffective assistance of counsel or of "prosecutorial misconduct" (as that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015)).

7. **DISCLOSURE OF INFORMATION**

    a. The United States retains the unrestricted right to provide information and make any and all statements it deems appropriate to the U.S. Probation Office and to the Court in connection with the case.

    b. Any information, statements, documents, and evidence that the defendant provides to the United States pursuant to this agreement may be used against the defendant at any time.

c. The defendant shall cooperate fully with the U.S. Probation Office. Such cooperation shall include providing complete and truthful responses to questions posed by the U.S. Probation Office including, but not limited to, questions relating to:

(1) criminal convictions, history of drug abuse, and mental illness; and

(2) financial information, including present financial assets or liabilities that relate to the ability of the defendant to pay a fine or restitution.

**8.     FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS**

a. Nothing in this agreement shall be construed to protect the defendant from administrative or civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture. Pursuant to 18 U.S.C. § 3613, all monetary penalties, including restitution imposed by the Court, shall be due immediately upon judgment, shall be subject to immediate enforcement by the United States, and shall be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts (which offset will not affect the periodic payment schedule). If the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum payments and shall not be a limitation on the methods available to the United States to enforce the judgment.

b. The defendant agrees to forfeit, and hereby forfeits, all interest in any asset that the defendant owns or over which the defendant exercises control, directly or indirectly, as well as any property that is traceable to, derived from, fungible with, or a substitute for property that constitutes the proceeds of the offense(s), or which was used to facilitate the commission of the offense(s), including the following property:

i.     $101,855.29 seized from Bank of America;

ii.    $106,195.11 seized from Capital One;

iii.   $43,929.21 seized from Ferguson Bath, Kitchen & Lighting; and

iv.    902 N. Coronado Drive, Gilbert, AZ 85234, more specifically described as: Lot 110, Discovery Park at Val Vista Lakes, according to Book 298 of Maps, page

26, records of Maricopa County, Arizona. APN: 304-98-110

c. The defendant further agrees to waive all interest in any such asset in any administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal. The defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant further understands and agrees that forfeiture of the assets is appropriate and in accordance with the applicable forfeiture statutes, which may include Title 8 U.S.C. § 1324(b), Title 18 U.S.C. §§ 924(d), 981, 982 and 2253, Title 21 U.S.C. §§ 853 and 881, and Title 28 U.S.C. § 2461(c).

d. Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this court may impose upon the defendant in addition to forfeiture. This agreement does not preclude the United States from instituting any civil or administrative forfeiture proceedings as may be appropriate now or in the future. The United States agrees, however, that it will recommend to the Attorney General apply, through restoration, the net proceeds from the identified forfeitures to any unsatisfied balance of the restitution that is ordered.

e. The defendant agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, double jeopardy or any other means) to any forfeiture imposed as a result of this guilty plea or any pending or completed administrative or civil forfeiture actions, including that the forfeiture constitutes an excessive fine or punishment. The defendant agrees to take all steps as requested by the United States to pass clear title to forfeitable assets to the United States, and to testify truthfully in any judicial forfeiture proceeding. The defendant acknowledges that all property covered by this agreement is subject to forfeiture as proceeds of illegal conduct, property facilitating illegal conduct, and substitute assets for property otherwise subject to forfeiture, and that no other person or entity has a legitimate claim to these items listed.

f. The defendant agrees not to file a claim to any of the listed property in any civil proceeding, administrative or judicial, which may be initiated. The defendant further agrees that he/she will not contest civil, administrative or judicial forfeiture of the listed property. The defendant agrees to waive his/her right to notice of any forfeiture proceeding involving this property, and agrees not to file a claim or assist others in filing a claim in that forfeiture proceeding.

g. The government reserves its right to proceed against any remaining assets not identified either in this agreement or in any civil actions which are being resolved along with this plea of guilty, including any property in which the defendant has any interest or control, if said assets, real or personal, tangible or intangible were involved in the offense(s).

h. The defendant hereby waives, and agrees to hold the government and its agents and employees harmless from any and all claims whatsoever in connection with the seizure, forfeiture, and disposal of the property described above. Without limitation, the defendant understands and agrees that by virtue of this plea of guilty, the defendant will waive any rights or cause of action that the defendant might otherwise have had to claim that he/she is a "substantially prevailing party" for the purpose of recovery of attorney fees and other litigation costs in any related civil forfeiture proceeding pursuant to 28 U.S.C. § 2465(b)(1).

## 9. **ELEMENTS**

### Wire Fraud

On or about April 2020 to July 2020, in the District of Arizona:

1. Defendant knowingly executed or attempted to execute a scheme or plan to defraud or for obtaining money or property by means of fraudulent pretenses, representations, promises, or omissions;

2.	The statements made or facts omitted were material; that is, they had a natural tendency to influence or were capable of influencing, a person to part with money or property;

3.	Defendant acted with the intent to defraud; that is, the intent to deceive or cheat; and

4.	Defendant used, or caused to be used, an interstate wire communication to carry out or attempt to further the scheme.

### Transactional Money Laundering

1.	Between May 2020 and March 2021, in the District of Arizona and elsewhere, the defendant knowingly engaged or attempted to engage in a monetary transaction;

2.	The monetary transaction was of a value greater than $10,000;

3.	The monetary transaction involved criminally derived property;

4.	Criminally derived property was derived from a specified unlawful activity namely, Wire Fraud;

5.	The defendant knew that the monetary transaction involved criminally derived property;

**FACTUAL BASIS**

a.	The defendant admits that the following facts are true and that if this matter were to proceed to trial the United States could prove the following facts beyond a reasonable doubt:

### Wire Fraud

b.	I, James Polzin, submitted loan documents on or about May 2020 through July 2020 bearing my signature. Each application sought an EIDL loan for businesses identified as Transparen CPAS LLC, Transparen CPAS, Transparen CPA, and POLZIN Holdings LLC. Separate loans were filed for Transparen CPAS and Transparen CPAS LLC as the former is my Sole Proprietorship and the latter is my Limited Liability

Company. Each application identified me, James Polzin, as owning 100% of the business. On each of the applications, I listed my residential address as XXXX S. Val Vista Dr., #218 Mesa, AZ. I sent these applications by wire using my laptop computer. I was either in Arizona or Ukraine. I know that the applications were sent to a receiving center located in Iowa.

  c. Transparen CPAS LLC was formed/registered on or about May 22, 2017. In order to support an EIDL in the amount of $150,000 for application 3000001644/loan 5556727802 utilizing EIN XX-XX19913, I misrepresented that the business, Transparen CPAS LLC, had revenue of $645,000 and nine employees.

  d. In order to support a second EIDL in the amount of $150,000 for application 3601386837/loan 7800007909 utilizing EIN XX-XX75306, I misrepresented that the business, Transparen CPAS, had revenue of $1,205,401 and 16 employees. In addition, I provided the SBA with an IRS Schedule C (Form 1040 or 1040-SR) which misrepresented Transparen CPAS had wages of $864,000.00.

  e. In order to support a third EIDL in the amount of $150,000 for application 3000003864 utilizing EIN XX-XX19913, I misrepresented that the business, Transparen CPAS LLC, had revenue of $952,000 and 11 employees. This application was not approved by the SBA.

  f. In order to support a fourth EIDL in the amount of $150,000 for application 3304691591 utilizing EIN XX-XX75306, I misrepresented that the business, Transparen CPA, had revenue of $12,507,874 and 16 employees. This application was not approved by the SBA.

  g. POLZIN Holdings LLC was formed/registered on or about March 14, 2019. In order to support an EIDL in the amount of $150,000 for application 3306367687/loan 9193768002 utilizing EIN XX-XX90157, I misrepresented that the business, POLZIN Holdings LLC, had revenue of $554,650 and eight employees.

  h. I knew that payroll records for Transparen CPAS LLC (EIN XX-XX19913) would show no quarterly tax and wage reports for the third and fourth quarters of 2019.

The first quarter of 2019 listed two employees, POLZIN and L.P., with total wages of $18,450.00. The second quarter listed three employees: POLZIN, L.P., and R.G. Second quarter wages totaled $21,100.00.

   i.   I knew that there would be no payroll records for my SSN, which was used as my EIN for Transparen CPAS, showed no additional wages.

   j.   I applied for at least 7 EIDL loans for myself and clients based on false information and was approved for 3 of them. Each of the loans was for the maximum loan amount of $150,000.

   k.   I also submitted at least 16 applications for Paycheck Protection Program ("PPP") loans containing misrepresentations, which all but 3 were approved. Four of the loans received were in the amount of $180,000, while the rest of the loans were in amounts of $200,845 - $221,867. Similar to the discrepancies located in the EIDL applications for the same entities, I submitted multiple PPP applications for the same entities. Similarities of fraud items between the loan applications include inflated payroll and the number of employees, among other things.

   l.   On the date specified below, I, James Polzin, did knowingly transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, as more particularly described below.

| Count | Date | Business Name | Application/ Loan | IP Address | Receiving Server |
|---|---|---|---|---|---|
| 1 | 4/3/20 | Transparen CPAS LLC | 3000003864 | 91.192.44.58 Chernihiv, Ukraine | Rapid Finance, Central US, Region, Iowa |

## Transactional Money Laundering

   m.   Among other things, I purchased with the proceeds from the fraudulently obtained EIDL and PPP loans above, with cash, the property located at XXX N. Coronado

- 11 -

Dr., Gilbert, Arizona 85234, on June 23, 2020, for $385,000.00.

n. The defendant shall swear under oath to the accuracy of this statement and, if the defendant should be called upon to testify about this matter in the future, any intentional material inconsistencies in the defendant's testimony may subject the defendant to additional penalties for perjury or false swearing, which may be enforced by the United States under this agreement.

## APPROVAL AND ACCEPTANCE OF THE DEFENDANT

I have read the entire plea agreement with the assistance of my attorney. I understand each of its provisions and I voluntarily agree to it.

I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I shall waive my rights to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in my defense, to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination, all with the assistance of counsel, and to be presumed innocent until proven guilty beyond a reasonable doubt.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charges to which I am entering my guilty plea. I have further been advised by my attorney of the nature and range of the possible sentence and that my ultimate sentence shall be determined by the Court after consideration of the advisory Sentencing Guidelines.

My guilty plea is not the result of force, threats, assurances, or promises, other than the promises contained in this agreement. I voluntarily agree to the provisions of this agreement and I agree to be bound according to its provisions.

I understand that if I am granted probation or placed on supervised release by the Court, the terms and conditions of such probation/supervised release are subject to modification at any time. I further understand that if I violate any of the conditions of my probation/supervised release, my probation/supervised release may be revoked and upon

such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment or my sentence otherwise may be altered.

This written plea agreement, and any written addenda filed as attachments to this plea agreement, contain all the terms and conditions of the plea. Any additional agreements, if any such agreements exist, shall be recorded in a separate document and may be filed with the Court under seal; accordingly, additional agreements, if any, may not be in the public record.

I further agree that promises, including any predictions as to the Sentencing Guideline range or to any Sentencing Guideline factors that will apply, made by anyone (including my attorney) that are not contained within this written plea agreement, are null and void and have no force and effect.

I am satisfied that my defense attorney has represented me in a competent manner.

I fully understand the terms and conditions of this plea agreement. I am not now using or under the influence of any drug, medication, liquor, or other intoxicant or depressant that would impair my ability to fully understand the terms and conditions of this plea agreement.

10/11/21
Date

JAMES THEODORE POLZIN
Defendant

## APPROVAL OF DEFENSE COUNSEL

I have discussed this case and the plea agreement with my client in detail and have advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea including the maximum statutory sentence possible. I have further discussed the concept of the advisory Sentencing Guidelines with the defendant. No

assurances, promises, or representations have been given to me or to the defendant by the United States or any of its representatives that are not contained in this written agreement. I concur in the entry of the plea as indicated above and that the terms and conditions set forth in this agreement are in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.

10/6/21
Date

JASON M. SILVER
Attorney for Defendant

## APPROVAL OF THE UNITED STATES

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth herein are appropriate and are in the best interests of justice.

GLENN B. McCORMICK
Acting United States Attorney
District of Arizona

10/13/21
Date

KEVIN M. RAPP
Assistant U.S. Attorney

## ACCEPTANCE BY THE COURT

4/7/22

- 14 -

Date

HONORABLE JOHN J. TUCHI
United States District Judge